IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV -5 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

HECTOR HERNANDEZ,       §
         §
         Applicant,      §
         §
v.                 §      No. 4:10-CV-182-A
         §
RICK THALER, Director,    §
Texas Department of Criminal  §
Justice, Correctional      §
Institutions Division,    §
         §
         Respondent.     §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by applicant, Hector Hernandez, a state prisoner currently serving a 50-year sentence for his conviction for murder in the 371st District Court of Tarrant County, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by applicant, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

On November 18, 2005, a jury found applicant guilty of murder and assessed his punishment at 50 years confinement in the

371st District Court of Tarrant County, Texas. (State Habeas R. at 102) Applicant appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, the Texas Court of Criminal Appeals refused applicant's petition for discretionary review, and the Supreme Court denied his petition for writ of certiorari. *Hernandez v. Texas*, No. 2-05-442-CR (Tex. App.–Fort Worth Jan. 25, 2007) (not designated for publication); *Hernandez v. Texas*, PDR No. 414-07. (Pet. at 2) Applicant filed a state application for writ of habeas corpus raising one or more of the claims presented herein, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. *Ex parte Hernandez*, Appl. No. WR-73,796-01, at cover. This federal petition followed.

The state appellate court summarized the factual background of the case as follows:

> On March 14, 2005, Kelton Rhodes and Jose Jauregui were shot and killed in a drive-by shooting at a Fort Worth, Texas apartment complex. The shots that killed them were fired from a rifle in a pickup truck owned and driven by Jesus Salcedo. Jesus Salcedo, Hector Ortega, Felipe Gobea, Jessica Canavan, and [applicant] a member of a northside Fort Worth street gang, were in the truck at the time of the shooting. At trial, the State sought to establish that [applicant] fired the shots.

> At the scene, police recovered a shell casing from a 7.62 caliber shell, the same caliber that an SKS

2

rifle uses. [Applicant] had recently purchased an SKS rifle. The police recovered from [applicant]'s house a high-capacity magazine capable of holding thirty-two cartridges, with twenty cartridges still inside. The magazine fit an SKS rifle.

Salcedo had driven to the apartment complex looking for Rogelio Escobar, a member of a rival gang, and, the State alleged, the intended target of the shooting. Ortega testified that the truck occupants had gone to the apartment complex intending to scare Escobar and his friends, who were standing outside the apartment, and that [applicant] fired gunshots with the SKS rifle and Gobea fired gunshots with a shotgun. Ortega further testified that after the shootings, all of the truck occupants helped dispose of the shell casings. Canavan testified that she did not see who shot which weapon.

(State Habeas R. at 105-06)

## II. ISSUES

In two grounds, applicant claims he was denied his constitutional right to effective assistance of counsel at trial and on appeal. (Pet. at 14, 22)

## III. RULE 5 STATEMENT

Respondent believes applicant has exhausted his state court remedies as to the claims raised as required by 28 U.S.C. § 2254(b)(1)(A). (Resp't Ans. at 3) Nor does it appear the petition is untimely or subject to the successive petition bar.

## IV. Discussion

### Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.

*Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See*

*also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel an applicant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a applicant's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Applicant contends he received ineffective assistance of trial and appellate counsel. Applicant was represented at trial by Roderick C. White and on appeal by J. Don Carter. The state habeas court conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting applicant's ineffective-assistance claims. (State Habeas R. at 178-82) Applying the *Strickland* attorney-performance standard to its factual findings, the state habeas court concluded applicant had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts of misconduct, the result of his trial or appeal would have been different. (*Id.* at 185-89) Applicant has failed to rebut the findings of fact by clear and convincing evidence, therefore the court defers to those findings.

**(a) Trial Counsel**

Applicant claims his trial counsel was ineffective by (1) promising the jury they would hear testimony that applicant was not present during the offense but presenting no evidence in support of his assertion, (2) failing to object to hearsay testimony by Officer Matt Hardy regarding what Robert Zarate told him about the shooting or procure Zarate as a witness, and (3)

failing to request a jury instruction on the lesser included offense of criminally negligent homicide or investigate his involvement. (Pet. at 14-21)

In counsel's affidavit, he testified, generally, regarding his representation of Applicant as follows:

> In June 2005, I was retained to represent Applicant in this case. Upon being retained to represent Applicant I immediately met with Applicant at the Tarrant County Jail where we had an extensive conversation concerning the allegations and facts involved in his case. This was the first of numerous client consultations that occurred at the Tarrant County Jail. In addition to routinely consulting with the Applicant I had numerous consultations with his family, most often his mother Maria Hernandez[,] concerning the case and strategies for our defense. Shortly after our first consultation I obtained a copy of the Tarrant County District Attorney's case file. This file contained various items such as, but not limited to, police reports, witness/co-defendant statements, photos of the alleged victims, crime scene photos, other photos of relevant places and objects, and reports of scientific testing. I personally reviewed the entire file and in subsequent client consultations I went through each document contained in the file with the Applicant. During these numerous subsequent client consultations the Applicant related both exculpatory versions of events as well as criminally liable versions of events. Furthermore, Applicant oddly provided numerous differing versions of the exculpatory scenarios. Exculpatory versions provided by the Applicant included at least two different alibi scenarios where the Applicant was simply not present at the offense. Another exculpatory version included the Applicant's presence at the offense but maintained that he was not actually shooting a gun. In this scenario Applicant maintained

that other individuals inside the vehicle were the
actual shooters.  The final exculpatory version
included a scenario of events involved [sic] the
Applicant being forced at gunpoint to participate in
the offense.  Subsequent consultations with Applicant's
family also revealed their desperate search for any
viable defensive strategy and willingness to provide
any necessary guilt/innocence testimony supporting the
selected defensive strategy.

Well prior to trial, I retained an experienced
licensed private investigator, Darrell Jones, to assist
with the case.  I immediately discussed all known
factual aspects of the case with Mr. Jones, preliminary
defensive trial strategies, and all investigative tasks
that still needed to be performed.  Additionally, I
provided Mr. Jones a complete copy on the case file and
made provision for Mr. Jones to independently consult
with the Applicant.  After Mr. Jones reviewed the case
file and independently interviewed Applicant, we met
again to finalize our pending investigative trial
strategy as it pertained to any and all possible
services that Mr. Jones could assist with.  One of Mr.
Jones' primary tasks was to attempt to make contact
with all known witnesses to the shooting.  In
conjunction with contacting all known witnesses, Mr.
Jones was to ascertain whether there were any unknown
witnesses.  Obtaining the trial testimony of Robert
Zarate was initially one of Mr. Jones' primary tasks.

Several weeks prior to our scheduled trial date, I
approached attorney Leon Haley asking if he would be
available to assist me in the trial of this matter.  I
have tried numerous cases with Mr. Haley and truly
value his legal opinion and trial abilities.  Neither
Applicant nor his family was asked to provide any
additional funds to compensate Mr. Haley.  I agreed to
compensate Mr. Haley from the money that Applicant's
family had already paid me.  Once Mr. Haley agreed to
assist in the trial I immediately discussed all known
factual aspects of the case with Mr. Haley, [and] our

preliminary defensive trial strategies. Additionally, I provided Mr. Haley a complete copy on [sic] the case file and made provision for Mr. Haley to independently consult with the Applicant. After Mr. Haley reviewed the case file and independently interviewed Applicant, Mr. Haley, Mr. Jones and I met again to finalize our pending trial strategy.

(State Habeas R. at 75-77)

More specifically, counsel responded to applicant's first claim, that counsel promised the jury they would hear testimony that applicant was not present during the offense but presented no evidence to support the assertion, as follows:

Regarding Applicant's contention that he received ineffective assistance of counsel because of comments made during opening statements, all experienced trial lawyers know that defensive strategies are always subject to modification based upon the evidence actually put before the jury during the actual trial of [the] case and assessments of how credible and/or effective the presentation of that evidence was. Prior to the presentation of evidence, Applicant insisted that he could provide effective alibi testimony. After the presentation of the State's case Applicant chose not to testify. I believe he chose not to testify because he doubted his ability to provide effective alibi testimony. I concurred with his decision not to testify because I knew that line of testimony would be perjured. Accordingly, the Applicant and I made a strategic decision not to present the proposed alibi testimony.

(State Habeas R. at 77-78)

Counsel responded to applicant's second claim, that counsel

10

failed to object to hearsay testimony by Officer Hardy regarding

out-of-court statements made by Robert Zarate after the shooting

or procure Zarate as a witness, as follows:

> Likewise, the decision not to object to the out of court statements of Robert Zarate was also strategic. Based upon his statement given to law enforcement shortly after the offense, Robert Zarate was a definite person of interest because he provided a possibly exculpatory and/or mitigating theory of the case.[1] Accordingly, well prior [to] trial Investigator Jones made numerous attempts to make contact with Zarate each time identifying himself, his role in the case, and leaving contact information requesting that Zarate return the contact. On two occasions after learning who Investigator Jones was individuals inside the residence refused to open the door or communicate any further. A third attempt resulted in Jones being told to call Zarate's lawyer if he wanted to communicate with Zarate. We were already aware that Zarate had an unrelated misdemeanor possession of marijuana charge pending at the time. Jones contacted Zarate's lawyer and was told not to make any further attempts to contact Zarate.

> > [1]Zarate's statement is attached as Exhibit A. Zarate's statement was only potentially exculpatory or mitigating because, if taken at face value and in conjunction with other accounts of where individuals were seated inside the truck at the time of the shooting, it potentially provides a tenuous line of reasoning to argue that Applicant was not one of the actual shooters.

> Since beginning the practice of law, I have always been [aware] of the procedures to obtain compulsory attendance of witnesses for trial and I was aware of those procedures at the time of my representation of

Applicant. However, based upon all of the other anticipated trial testimony I believed that Zarate was mistaken in his account of events. Furthermore, given Mr. Jones' reports of his attempts to make contact with Zarate, I believed it was clear that Zarate did not want to help us. There was even some indication that Zarate was either an associate or member of the rival gang that were the targets of the offense. Essentially, I believed Zarate's statement to law enforcement shortly after the offense was as good as we were going to get from him. I felt as though it would be very risky to subpoena him to testify at trial considering his clearly manifested unwillingness to assist the defense of the Applicant. Consequently, I decided to make every attempt to get the information contained in Zarate's witness statement before the jury without incurring the risk of calling Zarate as a witness, who was clearly uncooperative and quite likely even hostile. Accordingly, when the State's attorney broached the subject of Zarate's statement with his witness I made a strategic decision not to object. It was this testimony that provided the evidence necessary to support our contention that the driver and/or a front passenger were the shooters. None of the individuals in the truck at the time of the shooting placed the Applicant in the front seat. Applicant is now inexplicably contending that I was ineffective because I did not object to evidence that opened the door to an exculpatory and/or mitigating line of argument. This was a carefully calculated strategic decision that we were very luckily provided the opportunity to make.

(State Habeas R. at 78-79)

Finally, counsel responded to applicant's third claim, that counsel failed to request a lesser include offense instruction on criminally negligent homicide or investigate his involvement in

the offense, as follows:

Regarding Applicant's contention that I should have sought an instruction on the lesser included offense of criminally negligent homicide because there was no evidence that he intended to kill anyone, I would remind the Court that I did obtain an instruction for the lesser included offense of murder as opposed to the initial capital murder charge. Nevertheless, an instruction for the lesser-included offense of criminally negligent homicide was not warranted for at least two reasons. I am not aware how intentionally firing an assault rifle [at] other people could legally warrant any sort of negligence instruction. Secondly, Jessica Canavan testified that Applicant discussed who he was going to shoot prior to the shooting and bragged about the shooting afterwards. Canavan's testimony went a long way in preventing any instruction for criminally negligent homicide. Furthermore, if the judge had given an instruction for criminally negligent homicide, it would have effectively left the jury with no other logically viable alternative to the capital murder conviction. The evidence concerning intentional acts was in my opinion overwhelming and any negligence argument would have only angered and insulted the jury. Honestly, I was surprised the judge gave the lesser included instruction that he gave and even more surprised that the jury did not convict of capital murder.

Regarding Applicant's contention that he was merely present at the time of the offense passed out in the back seat, this is the first time I have heard this version of events. This was not a version of events that Applicant ever discussed with me. In fact, this new version of events is logically excluded by the other numerous versions of events (discussed above) that Applicant then reported to me.

(State Habeas R. at 79-80)

The state habeas court entered findings of fact consistent with counsel's testimony and, and applying the *Strickland* standard, concluded applicant had failed to show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability the results of the proceedings would have been different in the absence of counsel's alleged unprofessional errors. (*Id.* at 96-97) Specifically, the court entered the following relevant findings:

    b.    With respect to Applicant's claim that White failed to present evidence that Applicant was not present during the offense, White affirms in his affidavit that Applicant related several different versions of events on the night of the offense. One version of events was that Applicant was present but not the shooter, while another version was that Applicant was forced at gunpoint to participate in the offense. However, Applicant never told White that he was present at the time of the offense but passed out in the back seat.

           I.    The Court finds that White is licensed by and in good standing with the State Bar of Texas, is an honorable and experienced lawyer practicing criminal law, and is a credible individual.

          ii.    White stated during opening statements that the jury would hear evidence that Applicant was not present during the offense. White made this statement based on the belief at the time that Applicant would testify and provide credible alibi testimony. At the close of the State's case, Applicant chose

not to testify and provided no alibi testimony.
White's opening statements regarding alibi
testimony was reasonable in light of the
anticipation that Applicant would testify.
Applicant is not entitled to relief when the
evidence disproves his claim of substandard
representation and demonstrates the absence of any
reasonable probability of a different outcome.
Further, Applicant fails to prove that there was
other credible evidence that White could have
presented to show that Applicant was not present
during the offense.

c.  With respect to Applicant's claim that White was
deficient for failing to object to the hearsay
testimony presented by Officer Hardy, the decision
not to object was the result of reasonable trial
strategy as White believed Mr. Zarate's statements
to be helpful to the defense.  White made a
strategic decision not to call Mr. Zarate as a
witness based on his belief that Mr. Zarate would
be uncooperative and hostile.  White believed that
Officer Hardy's testimony regarding Mr. Zarate's
statements provided exculpatory and/or mitigating
evidence and therefore did not object to the
testimony. . . .

d.  With respect to Applicant's claim that White was
ineffective for failing to seek a jury instruction
for criminally negligent homicide, Applicant has
failed to prove that he was entitled to such an
instruction.

i.  This Court notes that White did obtain an
instruction for the lesser included offense
of murder as opposed to the initial capital
murder charge.

ii.  The decision to not request a jury

15

instruction on a lesser included offense can
be the result of reasonable trial strategy.
White did not request an instruction for
criminally negligent homicide because he did
not believe he was "not aware how
intentionally firing an assault rifle [at]
other people could legally warrant any sort
of negligence instruction."  Additionally,
the State's witness Jessica Canavan testified
that Applicant discussed who he was going to
shoot beforehand and then bragged about the
shooting afterwards.  White believed that a
jury instruction for criminal negligent
homicide would have left the jury with no
viable alternative to capital murder.  Thus,
White's decision not to request an
instruction was part of reasonable trial
strategy.

(*Id.*)

The state court's adjudication of the claims is not

unreasonable nor is it contrary to or involve an unreasonable

application of *Strickland*.  Applicant's claims are largely

conclusory or speculative, such as whether Zarate would have

testified on applicant's behalf and what the substance of

Zarate's testimony would have been.  The remaining claims are

contradicted by the record, involve strategic decisions by

counsel, or would have required counsel to make frivolous motions

or objections, which are either insufficient to raise a

constitutional issue and/or outside this court's preview on

federal habeas review.  *See Strickland,* 460 U.S. at 689 (holding

strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (noting claims of ineffective assistance for failing to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have testified to is too uncertain); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) (holding conclusory arguments are insufficient to support claim of ineffective assistance); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"); *Wilson v. Cockrell,* 70 Fed. Appx. 219, 2003 WL 21672834, at *9 (5th Cir. July 17, 2003) (explaining that because petitioner "cannot show that he was entitled to a lesser-included-offense instruction, he fails to demonstrate that counsel was ineffective for failing to request such an instruction"). The court need not address the prejudice prong.

**(b) Appellate Counsel**

Applicant contends appellate counsel was ineffective by failing to raise an issue regarding prosecutorial misconduct. Applicant complains the state made an improper argument during

closing by making the following remarks:

> For you to find Hex (applicant) not guilty, you have to ignore all the evidence in the case. Justice would not be served. *To find him not guilty, you need to look inside these people's eyes, and you need to tell them, 'Your son is not deserving.'*"

(Pet., App. B) (emphasis added)

Appellate counsel responded to applicant's claim in relevant part as follows:

> The record reflects that defense counsel's general objection to that statement, "that's an improper argument," was sustained, the prosecutor described that argument as a general plea for law enforcement, and the trial court thereafter instructed the jury to disregard the comment.

> At the time I prepared the appeal I was aware that the Texas Court of Criminal Appeals has repeatedly held that an instruction to disregard generally cures improper jury argument and that in only extreme cases will a mistrial be required. I did not believe at that time I prepared the appeal and do not now believe that the complained of argument fell outside the general rule.

> My general strategy on appeal is, and in the complained of appeal was, to present all non-frivolous issues and argument and to forgo presenting issues that may detract from the meritorious ones. I did not present the issue suggested by Applicant because I considered it to have insufficient merit.

(State Habeas R. at 74)

The state habeas court entered findings consistent with counsel's affidavit, and found that, although improper, the argument "was not so egregious or inflammatory that it could not

be cured by an instruction to disregard." (*Id.* at 98)
Accordingly, the court concluded counsel's decision not to raise
the misconduct on appeal was reasonable appellate strategy.
(*Id.*)

The state court's adjudication of the claim is not
unreasonable nor is it contrary to or involve an unreasonable
application of *Strickland*. Appellate counsel is not required to
raise every conceivable argument urged by his client on appeal,
regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88
(2000). It is counsel's duty to choose among potential issues,
according to his or her judgment as to their merits and the
tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749
(1983). Furthermore, prejudice does not result from appellate
counsel's failure to assert a meritless claim or a meritless
argument. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.
1994). Thus, it follows, that counsel was not ineffective for
failing to raise the issue on appeal.

### (7) *Evidentiary Hearing*

Applicant requests the court conduct an evidentiary hearing.
Section 2254(e)(2) provides:

> (e)(2) If the applicant has failed to develop the
> factual basis of a claim in State court proceedings,
> the court shall not hold an evidentiary hearing on the

claim unless the applicant shows that-

> (A)   the claim relies on-
>      (i) a new rule of
> constitutional law, made
> retroactive to cases on collateral
> review by the Supreme Court, that
> was previously unavailable; or
>      (ii) a factual predicate that
> could not have been previously
> discovered through the exercise of
> due diligence; and
>
> (B)   the facts underlying the claim
> would be sufficient to establish by clear and
> convincing evidence that but for
> constitutional error, no reasonable
> factfinder would have found the applicant
> guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Applicant has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

For the reasons discussed herein,

The court ORDERS the petition of applicant for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for

the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as applicant has not made a substantial showing of the denial of a constitutional right.

SIGNED November ___5___, 2010.

_____
JOHN McBRYDE
United States District Judge